IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

EDWARD S.,[1]

    Plaintiff,

vs.

ANDREW SAUL, Commissioner,
Social Security Administration,

    Defendant.

Case No. 6:18-cv-00249-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff Edward S. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

In October 2013, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning December 1, 2012 due to chest neuropathy, hip bursitis, hand numbness, and knee pain. Tr. 184–95, 202–15. Plaintiff's claims were denied both initially and upon reconsideration. Tr. 121–32, 134–44. Plaintiff appeared before an Administrative Law Judge ("ALJ") in March 2016. Tr. 40-92. At the hearing plaintiff was represented by an attorney. Tr. 42. A vocational expert also appeared and testified at the hearing. *Id.* Following the hearing, the ALJ issued an unfavorable decision and the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 15–19, 1–6. This action followed.

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quotation marks omitted)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th

Cir.2001). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). However, a reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26 (citing *SEC v. Cheney Corp.*, 332 U.S. 194, 196 (1947)).

## COMMISIONER'S DECISION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof falls to the claimant at steps one through four, and with the Commissioner at step five. *Id.*; *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001). At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant can perform

other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante*, 262 F.3d at 953–54.

Here the ALJ found that plaintiff was not disabled. At step one, the ALJ found that plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date of December 1, 2012. 20 C.F.R. § 404.1571 *et seq.*; 20 C.F.R. § 416.971 *et seq*. At step two, the ALJ found that plaintiff had the following severe impairments: clinically stable coronary artery disease status post quadruple vessel bypass in March 2011, left hip trochanteric calcific tendinitis, mild degenerative changes of the right shoulder with rotator cuff strain, mild multilevel cervical degenerative disc disease, unspecified obesity. 20 C.F.R. § 404.1520(c); 416.920(c). At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 404.1525; 404.1526; 416.920(d); 416.925; 416.926. The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); 416.920(e). The ALJ found that plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) subject to the following limitations:

> The claimant is able to lift and/or carry twenty pounds occasionally and ten pounds frequently with the left upper extremity and both upper extremities. He is able to lift ten pounds maximum with his right upper extremity alone. He is able to stand and/or walk six hours each in an eight-hour workday with normal breaks. He is able to sit for six hours in an eight-hour workday with normal breaks. He requires the freedom to shift between sitting and standing at thirty-minute intervals to manage hip discomfort. He is able to reach overhead occasionally with

his left upper extremity. He is able to handle and finger frequently with the right upper extremity. He is able to climb ladders, ropes, or scaffolds occasionally. He is able to climb stairs and/or ramps, balance, stoop, kneel, crouch, and crawl frequently. He must avoid concentrated exposure to hazards due to side effects of Lyrica and/or pain medication.

Tr. 25. At step four, the ALJ concluded that plaintiff is capable of performing past relevant work as a skip tracer. Tr. 32; 20 C.F.R. § 404.1565; 416.965. The ALJ continued to step five and found that plaintiff could perform work existing in the national economy; specifically, plaintiff could work as a gate guard and guard security. Tr. 33; 20 C.F.R. § 404.1569; 404.1569(a); 416.969; 416.969(a).

## DISCUSSION

On appeal, plaintiff contends that the ALJ erred by (1) failing to identify legally sufficient bases supported by substantial evidence in the record to reject the treating medical source opinion of Walter Scott Williams, M.D. and (2) failing to identify specific, clear and convincing reasons supported by substantial evidence in the record to reject plaintiff's subjective symptom testimony. I address each argument in turn.

### I. *Dr. Williams' Medical Opinions*

Plaintiff asserts that the ALJ erred in discounting the medical opinions of Dr. Walter Scott Williams, M.D., plaintiff's treating physician since January 2013. Tr. 382, 404. Dr. Williams provided medical opinions concerning plaintiff's physical and psychological limitations in a November 2013 RFC Questionnaire and a January 2016 Physical Assessment. Tr. 404–05, 495–96.

Social security law recognizes three types of medical sources: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to

the opinion of those who do not actually treat the claimant. *Id*. More weight is also given to an examining physician than to a non-examining physician. *Id*. To reject the uncontradicted opinion of a treating doctor, an ALJ must state "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Here, however, Dr. Williams' opinions were contradicted by state agency consultants and an examining physician. Thus, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence" to discount Dr. Williams' opinions. *Ryan*, 528 F.3d at 1198.

In 2013, Dr. Williams reported that he had diagnosed plaintiff with neuropathic chest pain and memory loss, which caused continuous chest pain and poor focus. Tr. 404. Medication increased plaintiff's drowsiness and memory loss. *Id*. He opined that plaintiff's prognosis was "poor" and plaintiff's symptoms "frequently" were "severe enough to interfere with the attention & concentration needed to perform simple work-related tasks." *Id*. He also opined that plaintiff needed 30-60 minute, unscheduled breaks every 4 hours during a workday; that plaintiff could walk eight blocks without rest or significant pain; that plaintiff could sit for up to an hour at a time and for a total of 4 hours per day, and stand or walk for up to 30 minutes at a time and for a total of 2 hours per day. *Id.* Plaintiff needs a job where he can shift at will between sitting, standing, and walking. *Id*. Dr. Williams also opined that plaintiff could occasionally lift under 10 pounds but could never lift 10 pounds or more; could grasp, turn, and twist objects and perform fine manipulation 50 percent of the day; and could never reach. Tr. 405. He opined that

plaintiff would likely miss work more than four times a month and was not physically capable of working an 8-hour day, 5 times a week on a sustained basis. *Id*. Finally, Dr. Williams opined that plaintiff had "significant memory impairment affecting work." *Id*.

By 2016, Dr. Williams had diagnosed plaintiff with "Anoxic brain injury – mild to moderate," neuropathic chest pain, cardiovascular disease, angina, hip arthritis, and hand pain. Tr. 495. He opined that plaintiff's symptom were "constantly" severe enough to interfere his ability to focus at work and that plaintiff needed 10-15 minute breaks hourly. *Id*. He also opined that plaintiff was limited to walking two blocks at a time, sitting for a total of two hours a day, and standing or walking for one hour a day. *Id*. Plaintiff's ability to lift improved to lifting up to 20 pounds occasionally, but never 50 pounds. *Id*. He opined that plaintiff was able to grasp, turn, twist, and perform fine manipulation 10 percent and to reach for 5-10 percent of the day. *Id*. Finally, Dr. Williams opined that plaintiff would likely miss work more than four times a month and that he "has cognitive dysfunction with decrease in memory and executive function." Tr. 496.

The ALJ gave Dr. Williams' opinions "little weight." Tr. 31.

As an initial matter, plaintiff argues that the "ALJ failed to consider Dr. Williams' opinions under the appropriate factors, which 'alone constitutes reversible legal error.'" Pl.'s Br. at 6 (quoting *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017)). An ALJ's failure to consider factors like the length of the treating relationship, frequency of medical examinations, the nature and extent of the

treatment relationship, and the supportability of the opinion constitutes reversible error. *Trevizo*, 871 F.3d at 676 (citing 20 C.F.R. § 404.1527(c)(2)–(6)). Here, the ALJ recognized that Dr. Williams was plaintiff's "[p]rimary treating physician." Tr. 30. Although the ALJ did not expressly discuss the nature, length, and extent of Dr. William's treating relationship, the ALJ's decision, which thoroughly discusses plaintiff's treatment record at step two and step five, demonstrates that the ALJ reviewed Dr. Williams' treatment notes and gave his opinions the careful consideration owed to them under the regulations. Tr. 21–24, 26–29. The ALJ did not err in this regard.

Plaintiff also argues that the ALJ failed to provide specific and legitimate reasons that are supported by substantial evidence to discount Dr. Williams' opinions. The ALJ provided three reasons for his treatment of the opinions.

First, the ALJ reasoned that Dr. Williams' opinions were inconsistent and unsupported by the longitudinal evidence of record, including Dr. Williams' own treatment notes. Tr. 31. Specifically, the ALJ noted as an example that "Dr. Williams' extreme limitations opinions" were contrary to his "mostly normal" examination findings "regarding [plaintiff's] upper extremities and hips." *Id*. He also observed that plaintiff's "imaging shows normal to only mild findings, mostly normal cardiac catheterized angiogram results, and his nerve conduction (EMG) testing shows completely normal results." *Id*. These are specific, legitimate reasons to reject a treating physician's opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

The ALJ's decision discussed plaintiff's medical history and treatment in detail, impairment by impairment. In doing so, the ALJ recognized that Dr. Williams' examinations and imaging revealed some abnormalities. For example, the ALJ discussed examinations showing tenderness and decreased range of motion in plaintiff's shoulder, hip, elbow, wrist, and hand, some loss of sensation and, at one point, loss of strength in plaintiff's hand. And the ALJ acknowledged that x-rays showed evidence of "calcific tendinosis" in plaintiff's left hip, Tr. 27 (citing Tr. 444); "mild glenohumeral degenerative change" in plaintiff's right shoulder, *id.* citing (Tr. 451, 483–84); and a cardiac angiogram showing "multilevel coronary artery disease, left main without angiographic stenosis, left anterior descending artery with fifty to ninety percent stenosis with a left circumflex occluded in mid portion of vessel and the right coronary artery only proximally occluded[,]" Tr. 26 (citing Tr. 424–25). At the same time, treatment notes reported that plaintiff's coronary artery disease had been clinically stable for the period at issue, *id.* (citing Tr. 293, 359–61, 424, 457, 469, 473, 488-89, 493); plaintiff's hip and shoulder issues waxed and waned, Tr. 27 (citing Tr. 348, 352, 378–79, 451, 458, 461, 472, 479–93); and he reported right elbow and hand issues "infrequently," Tr. 28 (citing 454, 457, 472, 487, 489–90). And, besides the abnormalities previously mentioned, plaintiff's examination results generally showed normal movement, strength, and sensation, Tr. 27–28 (citing Tr. 352, 460, 468, 492 (hip); Tr. 378–79, 479, 484, 487–88, 493 (shoulder); 456–57, 472, 487, 489–90, 493 (elbow and hand)) and imaging showed either mild abnormalities or, in the

case of plaintiff's EMG testing, normal functioning, Tr. 27–28 (citing Tr. 444 (hip), Tr. 451 (shoulder), Tr. 401 (elbow and hand)).

Having reviewed this evidence and the full medical record, the Court finds that the ALJ's discussion and assessment of the record is reasonable, as were his characterizations of Dr. Williams' treatment notes and imaging results. ALJ reasonably found that Dr. Williams' opinions of extreme physical limitation conflicted with his notes and objective medical evidence. Plaintiff offers his own summary of his medical record and asserts that it supports Dr. Williams' opinions. But "where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo*, 871 F.3d at 674–75.

Second, the ALJ reasoned that plaintiff's reported activities, like using a pressure washer and working as a mechanic, are "inconsistent with Dr. Williams' opinions of extreme physical restriction." Tr. 31. Conflict between a treating physician's opinions and a plaintiff's reported activities may justify rejecting those opinions. *Ghanim*, 763 F.3d at 1162. In March 2013, plaintiff reported to Dr. Williams that he had injured his elbow after trying to use a pressure washer. Tr. 313. And at the hearing, plaintiff testified that he does mechanic work for neighbors every "couple of months or a couple times in a month, but sometimes . . . goes a few months without doing anything." Tr. 74–75. The week of the hearing, or the week before, he had charged and checked a dead battery and before that he put speakers in a friend's pickup truck. Tr. 74. The hardest job he did in the last year was changing the breaks of a car, which took him two days, and involved using a floor jack, jack stand, and air

wrench. Tr. 75. Plaintiff's single, failed attempt to use a pressure washer does not conflict with Dr. Williams' opinions. However, weighed in conjunction with plaintiff's other mechanic activities, the ALJ reasonably concluded that plaintiff's reported activities suggested that he was able to do more than Dr. Williams' opined limitations would allow. "Even where [reported] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)).

Finally, the ALJ reasoned that Dr. Williams' opinions concerning plaintiff's psychological functioning were "completely inconsistent with the opinions of psychological experts and examiners," Drs. Kordell N. Kennemer, PsyD, Megan D. Nicoloff, PsyD, and Julien Guillaumot, Ph.D., ABPP, MSCP. Tr. 31. Drs. Kennemer and Nicoloff are state agency consultants who reviewed plaintiff's medical record in February and June 2013, respectively. Tr. 99, 111. Although "[t]he opinion of a *nonexamining* medical advisor cannot *by itself* constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician[,]" the Ninth Circuit has "consistently upheld the Commissioner's rejection of a treating or examining physician, based in part on the testimony of a nontreating, nonexamining medical advisor," when the ALJ has pointed to additional evidence in support of this decision. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (emphases added). And "[o]pinions of a nonexamining, testifying medical advisor

may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Id*. at 600.

Here, the ALJ also relied on the opinions of Julien Guillaumot, Ph.D., to reject Dr. Williams' opinions. Dr. Guillaumot *did* examine plaintiff in April 2016, on Dr. Williams' referral, Tr. 498, and the ALJ found that Dr. Guillaumot's opinions were "consistent with and supported by the longitudinal evidence of record, including Dr. Guillaumot's own examination findings," Tr. 31. The ALJ also found that the opinions of Drs. Kennemer and Nicoloff were "consistent with and supported by the evidence of record, including" the findings Dr. Guillaumot's neuropsychological evaluation. *Id*. Accordingly, the ALJ did not err in relying on these opinions to reject Dr. Williams' opinion.

In sum, the ALJ did not err in discounting Dr. Williams' opinion testimony.

## II. *Plaintiff's Symptom Testimony*

Plaintiff also asserts that the ALJ erred by discounting his testimony about his physical and psychological symptoms, which plaintiff provided in a November 2013 Function Report and at the hearing in March 2016.

In 2013, plaintiff claimed that he could not work because of "neuropathy in chest" caused by his 2011 "quad bypass," sternum irritation caused by overuse of his arms, poor memory, hip bursitis that "makes sitting and standing for a period a problem as well as walking," and that "painful numbness" in his right hand, which causes him to drop things. Tr. 234. Plaintiff estimated that he could walk up to two blocks before needing to stop and rest for a couple hours and could concentrate for up

to a half hour. Tr. 239. He reported that he would "sometimes draw a blank" and "lose track of what [he] was trying to do[,]" that instructions would sometimes not register right away after he read them, and that he will forget spoken instructions if he does not write them down." Tr. 238–39. Plaintiff also claimed that his symptoms prevented him from being able to "mow the yard, [do] mechanics, work, [and] build computers." Tr. 235.

Plaintiff testified that he has trouble gripping, which impacts his ability to use a hammer and lift thing. Tr. 64, 73. Plaintiff testified that he could lift a half gallon of milk, but once dropped a gallon of milk. Tr. 73. He also testified that he could stand for about twenty minutes at a time, sit for an hour in a comfortable chair, and spent most of his days changing positions "constantly." Tr. 73–74. Plaintiff's hand numbness wakes him up three to four times a month. Tr. 71. Regarding his psychological functioning, plaintiff testified that he has had word finding and memory problems since his heart attack and surgery, and often burns food while cooking because he forgets to set a timer. Tr. 65–68, 72, 75–76.

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of her symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are

not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d at 1163.

An ALJ may consider a range of factors in assessing credibility, including "ordinary techniques of credibility evaluation," like "prior inconsistent statements concerning the symptoms[;]" "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment;" and "the claimant's daily activities." *Id*. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ found that plaintiff's medically determinable impairments could be reasonably expected to cause the alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 26. The ALJ reasoned, generally, that the record "shows that [plaintiff's] level of functioning is not as fully limiting as alleged" and that objective medical findings were not "generally consistent with the degree of impairment alleged by" plaintiff. *Id*. But the ALJ noted that he did include additional restrictions in the RFC based on plaintiff's testimony, including "frequent handling and fingering with the right upper extremity, ten-pound lifting limitations for the right upper extremity, and freedom to shift sit/stand positions at thirty-minute intervals." *Id.*

The ALJ reasoned that plaintiff's work activity after the alleged onset date, though not disqualifying substantial gainful activity, "indicate[s] that [plaintiff's] daily activities have, at least at times, been somewhat greater than the claimant has generally reported." Tr. 29. The ALJ noted that plaintiff reported using a pressure washer machine and doing odd jobs as a vehicle mechanic. *Id.* (citing Tr. 313, 60–62, 74–75). As mentioned, an ALJ may discount symptom testimony that is inconsistent with a plaintiff's claimed limitations. *Molina*, 674 F.3d at 1113. Here, the ALJ reasonably found plaintiff's mechanic work throughout the period at issue, though sporadic, contradicted his 2013 allegation that he was not able to work as a mechanic and involved physical demands that were inconsistent with the full extent of his alleged physical limitations.

The ALJ also reasoned that plaintiff's alleged physical and psychological limitations were inconsistent with objective medical evidence. Tr. 26, 29. Although "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). As noted above, the ALJ's decision provided an impairment-by-impairment discussion of evidence of plaintiff's pain and other physical symptoms. The ALJ could reasonably find that plaintiff's physical symptom testimony was inconsistent with his mostly normal examination and imaging findings.

The ALJ also reasonably found that plaintiff's claims that he has word-finding and memory problem inconsistent with Dr. Guillaumot's finding that plaintiff had "no indication" of verbal or memory deficits during the exam. Tr. 29 (citing Tr. 501). Plaintiff argues that the ALJ failed to account for his decision not to take medications that impact his mental functioning on the day of the evaluation. Tr. 503. The record shows that side effects of plaintiff's medication include increased drowsiness and cognitive issues. Tr. 382, 404. 495. But, contrary to plaintiff's assertions, this evidence does not clearly show that his cognition is significantly worsened by his medication. Further, the record suggests that the cause of plaintiff's mental symptoms, if any, are unclear and complex. Dr. Williams opined that plaintiff's memory issues were caused, in part, by anoxic brain injury following surgery. Dr. Guillaumot opined that plaintiff a "mild overall slowness" that "possibly in part" existed before surgery and was "mediated by pain or his intake of pain medication." Tr. 503. Thus, the ALJ did not err in finding inconsistency between plaintiff's testimony and his performance at his neurological evaluation.

The ALJ also discredited plaintiff, in part, because of prior inconsistent statements. Specifically, the ALJ noted that plaintiff reported in his 2013 function report that he is not able to work as a mechanic, but at the hearing he testified that he performed mechanic work out of his home, sometimes for money and other times as a favor, throughout the period at issue. Tr. 29 (citing Tr. 235). The ALJ also cited disability reports plaintiff submitted in March and July 2014, where plaintiff stated that he had not worked since his last report. *Id.* (citing Tr. 262, 272). As mentioned,

an ALJ may rely on prior inconsistent statements to discount subjective symptom testimony. *Ghanim*, 763 F.3d at 1163.

Plaintiff also challenged other reasons asserted by the ALJ, including plaintiff's receipt of unemployment benefits in 2013, findings that plaintiff failed to comply with certain treatment recommendations and that many symptoms were well controlled with treatment, and alleged symptom magnification. But any error in relying on those reasons would be harmless because the ALJ's credibility determination is supported by the specific, clear and convincing reasons and by substantial evidence, as discussed above. *Carmickle v. Comm'r*, 533 F.3d 1155, 1162–63 (9th Cir. 2008).

In sum, the ALJ's decision is supported by substantial evidence and free of harmful legal error.

## CONCLUSION

For the reasons above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

Dated this  25th  day of May 2021.

/s/Ann Aiken

Ann Aiken
United States District Judge